# EXHIBIT 5

```
                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF TEXAS
                          HOUSTON DIVISION

UNITED STATES OF AMERICA       *    CRIMINAL NO. H-18-278
                               *
VERSUS                         *    Houston, Texas
                               *    January 10, 2019
PRESMER LLC and ANNSLEY POPOV  *    9:00 a.m.

                            SENTENCING
                BEFORE THE HONORABLE LEE H. ROSENTHAL
                  CHIEF UNITED STATES DISTRICT JUDGE
```

For the Government:

    Mr. Richard J. Powers
    United States Department of Justice
    Environmental Crimes Section
    601 D Street NW
    Suite 2106
    Washington, DC 20004

    Mr. Steven Thomas Schammel
    United States Attorney's Office
    1000 Louisiana Street
    Suite 2300
    Houston, Texas 77002

For the Defendants:

    Mr. David Gerger
    Gerger Hennessy & Martin
    700 Louisiana St., Suite 2300
    Houston, Texas 77002

    Mr. Christopher Leigh Peele
    Peele Nimocks Law Firm
    4002 E. Highway 290
    Dripping Springs, TX 7862

Proceedings recorded by mechanical stenography, produced by computer-aided transcription.

```
 1   Appearances - Con't:

 2

 3

 4   Court Reporter:

 5           Fred Warner
             Official Court Reporter
 6           515 Rusk Avenue
             Houston, Texas 77002
 7
09:51:12AM
09:51:12AM  8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
09:04:59AM   1              THE COURT:  Good morning.  Please be seated after
09:05:00AM   2   stating your appearances.  State your appearances, please.
09:05:01AM   3              MR. SCHAMMEL:  Steve Schammel for the United States
09:05:06AM   4   government, Your Honor.
09:05:06AM   5              MR. POWERS:  R.J. Powers for the United States
09:05:10AM   6   government Environmental Crimes Section.
09:05:10AM   7              MR. GERGER:  Good morning, Your Honor.  David Gerger
09:05:12AM   8   and --
09:05:13AM   9              MR. PEELE:  Chris Peele, Your Honor, for the
09:05:17AM  10   defense.
09:05:17AM  11              THE COURT:  All right.  Thank you.
09:05:17AM  12                   And is Ms. Popov here?
09:05:19AM  13              MR. PEELE:  She is.
09:05:19AM  14              THE COURT:  All right.  Come on up, please, with
09:05:21AM  15   your counsel.
09:05:27AM  16                   And on behalf of Presmer, who is appearing?
09:05:31AM  17              MR. GERGER:  Ms. Popov as well, Your Honor.
09:05:34AM  18              THE COURT:  Very good.  Thank you.
09:05:34AM  19                   Mr. Gerger, have you and Ms. Popov together
09:05:38AM  20   reviewed the presentence report and the related materials?
09:05:43AM  21              MR. GERGER:  Yes, Your Honor.
09:05:44AM  22              THE COURT:  Do you have any objections?
09:05:45AM  23              MR. GERGER:  No.
09:05:46AM  24              THE COURT:  The government, I gather, has no
09:05:49AM  25   objections, correct?
```

```
09:05:50AM   1              MR. POWERS:  None, Your Honor.
09:05:52AM   2              THE COURT:  As to Ms. Popov -- and let's do that
09:05:55AM   3   first -- the Total Offense Level is 15 and the Criminal
09:06:02AM   4   History Category is 2.  The guideline range is 21 to 27
09:06:08AM   5   months, but the statute does permit probation of up to three
09:06:18AM   6   years.  There is a fine range of $7,500 to $75,000 and a
09:06:27AM   7   mandatory special assessment of $100.
09:06:28AM   8              As to Presmer, there is no restitution
09:06:34AM   9   obligation, the statutory cap of the fine is 500,000,
09:06:40AM  10   guideline range is 120,000 to 240,000 and a $400 special
09:06:46AM  11   assessment.
09:06:49AM  12              And at this time -- and it's fairly, the
09:06:55AM  13   factual basis for both is undisputed.  The 13 shipments,
09:07:02AM  14   1,865 pieces of merchandise made of python or stingray skin
09:07:10AM  15   contrary to federal law protecting the species used to make
09:07:14AM  16   these accessories, and using false invoices and weigh bills,
09:07:22AM  17   failing to file the necessary declaration and obtain the
09:07:25AM  18   necessary permits from the country of origin for some of the
09:07:33AM  19   products.  It is an offense that Ms. Popov ended as soon as
09:07:49AM  20   she was detected, not before, but has been free of any kind
09:07:57AM  21   of similar or other activity of a criminal nature since, and
09:08:01AM  22   it's been over five years.
09:08:04AM  23              Is that an accurate summary?
09:08:06AM  24              MR. POWERS:  Yes, Your Honor.
09:08:08AM  25              THE COURT:  At this time I would like to hear from,
```

09:08:09AM 1  in whatever order Mr. Gerger and counsel want to address the
09:08:15AM 2  Court, I would like to hear from counsel for the defendant,
09:08:18AM 3  from the defendant, from the government.  And I have read the
09:08:22AM 4  many -- I've read, of course, the sentencing memo and the
09:08:26AM 5  many letters of support filed on behalf of Ms. Popov.
09:08:31AM 6              Go ahead, please.
09:08:31AM 7              MR. GERGER:  Your Honor, I'll be very brief, and
09:08:32AM 8  then Ms. Popov, of course, will speak.
09:08:32AM 9              THE COURT:  Of course.
09:08:38AM 10             MR. GERGER:  Representing Ms. Popov has reminded me
09:08:40AM 11 that when a good person is under investigation, it's the
09:08:44AM 12 first thing they think about in the morning, it's the last
09:08:47AM 13 thing they think about before they go to bed; and in between
09:08:51AM 14 those hours they take care of their business, their family,
09:08:58AM 15 their children, their volunteering and their school.
09:09:01AM 16             But it wasn't until I received these letters,
09:09:04AM 17 which they are truly extraordinary.  We don't often have
09:09:10AM 18 people who, I called it random acts of kindness in the
09:09:16AM 19 sentencing memorandum.  Someone is flooded, Annsley helps
09:09:22AM 20 them; someone has mold, Annsley helps them; someone has
09:09:22AM 21 cancer, she travels to the treatments with them.
09:09:26AM 22             Normally, Your Honor, I would read for you the
09:09:29AM 23 people who have come to support her, but there are so many
09:09:33AM 24 people here from so many places, friends, family, people from
09:09:38AM 25 school, church, people who have traveled from out of town, I

```
09:09:43AM   1   think I will simply leave it as you see in the audience.
09:09:45AM   2            THE COURT:  I see a large crowd.
09:09:47AM   3            MR. GERGER:  A large crowd who support her.
09:09:49AM   4            THE COURT:  And I don't think they're here for the
09:09:50AM   5   government.
09:09:51AM   6            MR. GERGER:  No.  But they're here knowing what she
09:09:55AM   7   did.
09:09:56AM   8               In our memo we addressed the 3553(a) factors.
09:10:02AM   9   If there is any one in particular I should address, I would
09:10:05AM  10   regret it if you had a question about it.  But if there are
09:10:09AM  11   no questions, then I will just ask Annsley to speak to you;
09:10:12AM  12   and if you will allow it, of all the people who are here,
09:10:15AM  13   would you allow her father to make a very short statement as
09:10:15AM  14   well?
09:10:20AM  15            THE COURT:  Of course.
09:10:21AM  16              Ms. Popov.
09:10:21AM  17            THE DEFENDANT:  Dear Judge Rosenthal:  I believe if
09:10:28AM  18   I were in your shoes I would want to hear why I committed a
09:10:32AM  19   crime and what I have done with my life since 2013.
09:10:36AM  20               I don't want to make any excuses.  I cut
09:10:42AM  21   corners to fill my orders for my business, and that was
09:10:47AM  22   wrong.  I broke the import law.  When I met with the agent in
09:10:52AM  23   2013, I omitted that I shipped without CITES and with false
09:10:59AM  24   descriptions.  After that, I blamed my supplier wrongly.
09:11:04AM  25   These were my actions.
```

                        And I want to say to you, and I want to say to you and the probation officer and the prosecutor that I am sorry, and I take and I accept responsibility for it. I failed to live up to the standards that my parents set for me. It's painful for them to see this. And I am very grateful for their love. Maybe even more importantly, I failed to live up to the standards that I expect my own children to live up to.

                        And that brings me to what I've done since 2013. Since 2013 I have lived up to those standards. I have stayed active in my community and I supported others when they needed it. Most importantly, I have best the best mother I can be to my children, Hudson and Palmer. They are now 15 and 10, and they are such wonderful young people and I love them so much.

                        I debated a long time whether to bring them to this hearing. Ultimately I decided it would be best for them not to be here in person, but I promise I will use this terrible experience to teach them to be proud and good and not to break the law.

                        I regret that my actions over the past five, over five years ago have now ruined my business. As you know, after I pled guilty, the consultant I used for my permits and the majority of the stores that have carried my products stopped dealing with me. I doubt whether I will be

```
09:13:01AM   1   able to rebuild this business.
09:13:03AM   2              Also, these last five years I have tried to be
09:13:09AM   3   a good wife.  I am so very thankful for my husband, and I
09:13:13AM   4   have brought a lot of to pain to my family.
09:13:15AM   5              In sum, for the last five years, despite my
09:13:20AM   6   failures, I have tried to be a good person.  I am very, very
09:13:25AM   7   embarrassed and I am very, very sorry for what I did; and I
09:13:31AM   8   am begging you to let me stay with my family, my children.  I
09:13:37AM   9   promise I will not disappoint you.
09:13:39AM  10              THE COURT:  Thank you, Ms. Popov.
09:13:43AM  11              Did you want your father to address the Court?
09:13:47AM  12   I am happy to hear him.
09:13:52AM  13              MR. EGGERS:  Thank you.
09:14:04AM  14              THE COURT:  Would you please state your name, sir.
09:14:05AM  15              MR. EGGERS:  My name is Stan Eggers.
09:14:14AM  16              THE COURT:  Thank you.  Go ahead, please.
09:14:16AM  17              MR. EGGERS:  Your Honor, good morning.
09:14:20AM  18              I am 67 years old, and I am not a public
09:14:26AM  19   speaker.  I'm an imperfect dad speaking on behalf of my
09:14:32AM  20   daughter, who is not perfect either, but she is truly a good
09:14:38AM  21   person.  We love her, and she is passing that love to her
09:14:44AM  22   children, to her community and to her husband.
09:14:48AM  23              Since she was a little girl growing up in a
09:14:53AM  24   small town in Alabama, she was always following her teaching
09:14:59AM  25   to help others.  I believe you received some letters from
```

```
09:15:05AM   1  people here saying she still has those values.
09:15:11AM   2                Annsley is a blessing.  This case has taken
09:15:17AM   3  such a toll on her and us.  I'm asking you with every ounce
09:15:26AM   4  of my strength if it's within your power to serve her
09:15:32AM   5  punishment some other way than prison.
09:15:38AM   6                Thank you, Your Honor.
09:15:40AM   7             THE COURT:  Thank you, sir.
09:15:41AM   8                Anything else on behalf of Ms. Popov and
09:15:47AM   9  Presmer?
09:15:47AM  10             MR. GERGER:  Not now, Your Honor.  Thank you.
09:15:48AM  11             THE COURT:  All right.
09:15:50AM  12                And the government, please.
09:15:51AM  13             MR. POWERS:  Thank you, Your Honor.
09:15:53AM  14                The government does not take exception to or
09:15:58AM  15  contest any of the mitigating evidence, the letters of
09:16:02AM  16  support that have been provided by defense for the Court's
09:16:06AM  17  review.
09:16:07AM  18             THE COURT:  Probation.  Does the government oppose
09:16:09AM  19  probation?
09:16:10AM  20             MR. POWERS:  The recommendation -- if I may put it
09:16:14AM  21  this way, Your Honor.  The government would recommend, as we
09:16:19AM  22  have done in similar cases, including those cases that are
09:16:23AM  23  listed in page 11 of the defense sentencing memorandum, we
09:16:27AM  24  want it consistent for our recommendation for a guideline
09:16:29AM  25  sentence, certainly in the lower end of the guidelines.
```

```
09:16:32AM   1            However, we recognize the extensive and
09:16:34AM   2   substantial evidence in the case here and special
09:16:37AM   3   circumstances; and therefore, we would not challenge a
09:16:40AM   4   sentence of probation, although we would request that there
09:16:45AM   5   be some sort of perhaps home confinement added to that, which
09:16:49AM   6   also is consistent with the sentences that are listed in the
09:16:52AM   7   sentencing memorandum.
09:16:54AM   8            I did want to raise two matters in terms of the
09:16:57AM   9   evidence that was provided.  We do not take exception except
09:17:02AM  10   for two items which supports our recommendation as has been
09:17:05AM  11   stated to the Court.  First, with respect to the letters of
09:17:07AM  12   support, I would just observe that out of 63 that I read,
09:17:10AM  13   half of them listed the defendant's conduct as a mistake or
09:17:17AM  14   mistakes.  I know that it's typical in a lot of these
09:17:18AM  15   letters, we understand that.  However, this was not a
09:17:21AM  16   mistake.
09:17:21AM  17            THE COURT:  No.  The only mistake was in judgment.
09:17:24AM  18            MR. POWERS:  Thank you, Your Honor.  And I will
09:17:27AM  19   leave that to you, Your Honor.
09:17:28AM  20            The other matter I wanted to take up was the
09:17:31AM  21   claim by the defense in its sentencing memorandum that these,
09:17:36AM  22   particularly the pythons, were legally harvested in Asia.
09:17:41AM  23   While that is, generally speaking that is true, I think the
09:17:45AM  24   devil's in the details.  There is many things that a
09:17:48AM  25   harvester must do in Indonesia.  We're not even talking about
```

Case 1:22-cr-20170-RNS   Document 60-5   Entered on FLSD Docket 04/18/2024   Page 12 of 20
11

```
09:17:53AM   1   CITES, we're not talking about the convention and the permit
09:17:58AM   2   required by the convention, which the defendant has admitted
09:17:59AM   3   she did not obtain.  We're talking about in-country permits
09:18:01AM   4   that are required, we're talking about quotas that have to be
09:18:03AM   5   met and kept to, and we are talking about transport
09:18:07AM   6   documents.  We have evidence in our case that her supplier,
09:18:18AM   7   Tomi Saksono, spelled T-o-m-i S-a-k-s-o-n-o, did not, did not
09:18:20AM   8   really abide by quotas; and we have no evidence in all the
09:18:24AM   9   emails and email traffic that we saw that he in any way
09:18:27AM  10   obtained any permits or transport documents.
09:18:29AM  11            And the truth is -- and I think the Court is
09:18:32AM  12   probably well aware of this -- is that while local harvesting
09:18:35AM  13   is not the issue, the issue is the international market.  The
09:18:38AM  14   issue is the thousands and hundreds of thousands,
09:18:41AM  15   particularly of pythons, are being taken; and that is the
09:18:44AM  16   purpose of CITES, that's why it exists, in addition to the
09:18:46AM  17   fact Indonesia did in fact and has in fact taken steps to
09:18:51AM  18   control that species degradation.  And so, although it is
09:18:57AM  19   not -- we're not saying it's endangered, it's on CITES
09:19:03AM  20   Appendix II, the species is on CITES Appendix II because the
09:19:03AM  21   harvesting as such as it is in the international market
09:19:06AM  22   cannot be sustained, and that species cannot be sustained in
09:19:10AM  23   a third world country.  So again, that's why our
09:19:13AM  24   recommendation is such as it is.
09:19:14AM  25            So the recommendation is I think consistent
```

```
09:19:20AM   1   with the past cases we have cited.  We would not challenge a
09:19:23AM   2   sentence of probation, but we would ask for, if the Court
09:19:26AM   3   decides that this evidence is sufficient to depart from the
09:19:30AM   4   guidelines, since the Court is, I am sure, well aware of the
09:19:33AM   5   process in doing so, we ask that simply that there be a
09:19:38AM   6   reason entered there for a probation term in term of years
09:19:38AM   7   and home confinement.  Thank you, Your Honor.
09:19:42AM   8             THE COURT:  Thank you.
09:19:42AM   9              Mr. Gerger, do you want to respond?
09:19:44AM  10             MR. GERGER:  I think I will just go straight to a
09:19:49AM  11   discussion of probation, Your Honor.
09:19:53AM  12             THE COURT:  Tell me why you oppose home confinement.
09:19:55AM  13             MR. GERGER:  I oppose home confinement for a couple
09:19:58AM  14   of reasons.  The length of time that has gone by proves that
09:20:04AM  15   we have a person here who is rehabilitated, in compliance, is
09:20:10AM  16   not a threat to the community.  And, in fact, Your Honor, the
09:20:16AM  17   ordeal and lifelong stigma now, frankly, that's even a
09:20:23AM  18   greater punishment, that is a punishment.  She is not a
09:20:32AM  19   threat that she needs to be on home confinement.  And she has
09:20:37AM  20   responsibilities that she will fulfill.  In fact, Your Honor,
09:20:40AM  21   it's ironic we're here during a shutdown.
09:20:44AM  22             THE COURT: We are not shut down.  We have money
09:20:46AM  23   through the 18th.  Keep going.
09:20:49AM  24             MR. GERGER:  I won't go that long.
09:20:51AM  25                 But my point is --
```

```
09:20:52AM   1            THE COURT:  And by the way, we won't be shut down
09:20:55AM   2   after that.
09:20:55AM   3            MR. GERGER:  I know, I know.  But my point of that,
09:20:58AM   4   of saying that is that --
09:20:58AM   5            THE COURT:  We just won't be paid.
09:21:02AM   6            MR. GERGER:  And in consideration of our probation
09:21:04AM   7   officers, if you order probation, of course, Ms. Popov will
09:21:09AM   8   comply.  You could decide that the resources of the
09:21:14AM   9   government would better be served with a fine only or with a
09:21:19AM  10   one-year probation.  But I do not think home confinement is
09:21:25AM  11   needed.
09:21:25AM  12            And secondly, I know that your standard order
09:21:29AM  13   from 2007, 2017-1 adopts the standard conditions of
09:21:35AM  14   probation.
09:21:39AM  15            Mr. Eggers lives in Florida, Annsley's parents
09:21:41AM  16   live in Florida and North Carolina.  Her sisters are in
09:21:45AM  17   Maryland and Louisiana, Georgia, and her in-laws are in
09:21:52AM  18   Louisiana.  And we would ask that she be allowed to travel if
09:21:56AM  19   she is put on probation.
09:21:59AM  20            THE COURT:  Thank you.
09:22:00AM  21            Anything further?
09:22:03AM  22            MR. POWERS:  No, Your Honor.
09:22:04AM  23            THE COURT:  These cases are challenging for Courts
09:22:10AM  24   because they come to the Court in the context of all of the
09:22:13AM  25   cases that we see.  Of course, each defendant, each case
```

merits and receives individual consideration.

But when we get defendants that share some of the characteristics of Ms. Popov, smart, well educated, privileged, fully equipped with a value system guided by family, teaching and other parts of life living, evidence only the best values, the ones we cherish.  When defendants like this who have every ability to live a fully law-abiding life choose not to, it leaves the Court in an uncomfortable position because we have so many defendants who have no resources, who grew up deprived and who commit crimes that require very harsh sentences.

And the contrast between someone who comes in and says, I'm good person, I come from a good family, I have done a lot of good except for this; therefore, I don't need and should not receive a harsh punishment, there is a queasiness that results because of the clear irony of a good person who in one part of their lives does not make what we teach our children to call good choices.  And that's what Ms. Popov presents.

Mr. Gerger was absolutely right in his characterization of many of the 3553(a) factors.  The numbers and content of the letters that support Ms. Popov are evidence of that.

I believe that Ms. Popov is a genuinely kind and giving person, not only to family, not only to friends

```
09:25:09AM   1   when it's easy, but when it's not so easy.  That matters.
09:25:17AM   2   But when Ms. Popov began by saying, I cut corners, she did a
09:25:21AM   3   lot more than cut corners.
09:25:30AM   4              So what do I do with all of this?  I agree with
09:25:35AM   5   the defendant that probation is appropriate.  I don't believe
09:25:40AM   6   that this long afterwards, given the nature of the criminal
09:25:44AM   7   activity, that any kind of prison sentence is needed or
09:25:54AM   8   warranted.  I believe that three years is appropriate because
09:26:01AM   9   I also believe that because this was a business related crime
09:26:08AM  10   committed for money that the combination of fine and required
09:26:16AM  11   community service rather than a period of home confinement is
09:26:20AM  12   appropriate.
09:26:21AM  13              I would rather that Ms. Popov spend time that
09:26:27AM  14   she might otherwise have been stuck in a very nice home with
09:26:32AM  15   lovely children and with friends, which is not perhaps
09:26:40AM  16   punitive in the way the government mentions, I would rather
09:26:45AM  17   that the time instead be spent in a somewhat grittier form
09:26:52AM  18   of community service than Ms. Popov has been accustomed to
09:26:56AM  19   performing.  I am not talking about sitting in a conference
09:27:01AM  20   room at a meeting for a charitable organization.  I am
09:27:09AM  21   talking about something a little bit more hands on.
09:27:12AM  22              So where does that take us?  It is the Court's
09:27:16AM  23   judgment that based on the 3553(a) factors and the guidelines
09:27:22AM  24   that the appropriate sentence in this case is a three-year
09:27:26AM  25   term of probation, and it is the Court's judgment.  I will
```

1  impose the standard conditions with the requirement that
2  while I am not prohibiting travel, I am limiting it during
3  this three-year period.  I am limiting it to travel to visit
4  family, and I am limiting it in the sense that I am going to
5  require Ms. Popov to notify the probation officer and to
6  advise the probation officer of the purpose and nature of the
7  trip, duration, all of the usual.
8              I know that Ms. Popov is already receiving
9  mental health treatment, and I am going to require that that
10 continue.  The probation officer needs to be informed of it,
11 but I am not going to impose a requirement beyond that.
12             I am going to require the collection of a DNA
13 sample if that's authorized, but there will be no requirement
14 for any kind of drug testing or substance abuse testing.
15             I do require, because I am imposing a fine,
16 that you provide the probation officer with access to any
17 requested financial information and authorize the release of
18 any requested financial information, which may be shared with
19 the U.S. Attorney's office.
20             Ms. Popov also owes the United States
21 assessment, a special assessment of $1,000, Presmer 400 --
22 I'm sorry -- $100, Presmer $400.  That is due immediately.
23             I also order that the defendant, Ms. Popov, pay
24 to the United States a fine in the amount of $30,000 and that
25 Presmer pay a $120,000 fine for a total fine between the two

```
09:29:30AM   1   of them of $150,000.
09:29:32AM   2              A lump sum payment of $500 each is due
09:29:39AM   3   immediately.  The remaining balance will be due in monthly
09:29:45AM   4   installments of not less than $1,000 until paid in full,
09:29:51AM   5   payment to begin 30 days after the date of this judgment and
09:29:59AM   6   made to the United States District Clerk of this district.
09:30:01AM   7   That is $1,000 for each, Ms. Popov and Presmer.
09:30:10AM   8              And I believe that that addresses everything I
09:30:21AM   9   need to address.
09:30:23AM  10              Does the probation office know of anything more
09:30:25AM  11   that I need to address?
09:30:26AM  12         PROBATION OFFICER:  No, Your Honor.
09:30:27AM  13         THE COURT:  All right.
09:30:28AM  14              Anything on behalf of either party?
09:30:30AM  15         MR. POWERS:  You indicated community service.
09:30:32AM  16         THE COURT:  Oh, yes.  Thank you.  I did forget that.
09:30:34AM  17              I am going to required that Ms. Popov in
09:30:38AM  18   addition perform 500 hours of community service each of the
09:30:43AM  19   three years.  That's a lot, but it's not too much.  And I
09:30:48AM  20   order that that be performed at either the Star of Hope
09:30:52AM  21   Mission or Meals on Wheels and that Ms. Popov personally do
09:31:02AM  22   the service indicated.
09:31:04AM  23              The third alternative would be to work with
09:31:10AM  24   mothers at the Harris County jail, incarcerated women who
09:31:14AM  25   have children and are in need of assistance with respect to
```

| | | |
|---|---|---|
| 09:31:21AM | 1 | the children.  There are programs that the Harris County jail |
| 09:31:25AM | 2 | has in place.  Ms. Popov may use those.  She may volunteer at |
| 09:31:30AM | 3 | the Star of Hope Mission or she may volunteer as a driver or |
| 09:31:37AM | 4 | similar role in Meals on Wheels, and that the community |
| 09:31:48AM | 5 | service hours are to be reported to the probation officer. |
| 09:31:54AM | 6 | Now is there anything further? |
| 09:31:57AM | 7 | MR. POWERS:  Nothing from the government, Your |
| 09:31:58AM | 8 | Honor. |
| 09:31:58AM | 9 | THE COURT:  Thank you for the reminder. |
| 09:32:01AM | 10 | All right.  Thank you. |
| 09:32:02AM | 11 | I don't believe that there are any appellate |
| 09:32:04AM | 12 | rights that survive the plea agreement.  If you believe |
| 09:32:08AM | 13 | otherwise, you must file any appeal, notice of appeal within |
| 09:32:12AM | 14 | 14 days from the date the judgment is entered.  You may ask |
| 09:32:16AM | 15 | for an attorney to be appointed if you cannot afford one. |
| 09:32:19AM | 16 | Anything else? |
| 09:32:23AM | 17 | MR. POWERS:  No, Your Honor. |
| 09:32:24AM | 18 | MR. GERGER:  No, Your Honor. |
| 09:32:24AM | 19 | THE COURT:  Thank you very much.  All those who came |
| 09:32:29AM | 20 | today, thank you for demonstrating what the letters also |
| 09:32:33AM | 21 | demonstrated. |
| 09:32:34AM | 22 | You all are excused. |
| | 23 | |
| | 24 | |
| | 25 | (Conclusion of proceedings) |

1                           CERTIFICATION

5          I, Fred Warner, Official Court Reporter for the
6    United States District Court for the Southern District of
7    Texas, Houston Division, do hereby certify that the foregoing
8    pages 1 through 18 are a true and correct transcript of the
9    proceedings had in the above-styled and numbered cause before
10   the Honorable LEE H. ROSENTHAL, Chief United States District
11   Judge, on the 10th day of January, 2019.
12          WITNESS MY OFFICIAL HAND at my office in Houston,
13   Harris County, Texas on this the 25th day of February, A.D.,
14   2024.

19                                   /s/ Fred Warner
                                     Fred Warner, CSR
20                                   Official Court Reporter